## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

ASHTON AMBROSE AND B.D., BY     : <br>
AND THROUGH HIS PARENT,     : <br>
ASHTON AMBROSE,     : <br>
    : <br>
    Plaintiffs,     : <br>
    :     Case No. <br>
    v.     : <br>
    : <br>
ST. JOHNS COUNTY     : <br>
SCHOOL DISTRICT,     : <br>
    : <br>
    Defendant.     :

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DEMANDING A JURY TRIAL

### Preliminary Statement

1.    Ashton Ambrose, a veteran and person with disabilities, brings this action against the St. Johns County School District in her individual capacity and on behalf of her son, B.D., who is five years old and attends school in the District.

2.    Ms. Ambrose seeks to enforce her and B.D.'s rights under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132, *et seq*.; Section 504 of the Rehabilitation Act of 1973 (Section 504), 29 U.S.C. § 794, *et seq*.; and Florida law.

3.     The District has a policy of not providing school-bus transportation to families who live less than two miles from their school.

4.     Ms. Ambrose and B.D. live 1.9 miles from B.D.'s school.

5.     Because of her disabilities, Ms. Ambrose cannot consistently transport B.D. to and from school, so she requested a modification to the District's policy: she asked the District to accommodate her by allowing B.D. to use a school-bus stop that is at the front of her subdivision, about a quarter of a mile from her house.

6.     The District refused to provide that reasonable modification.

7.     That refusal not only violates Ms. Ambrose's rights under the ADA and Section 504 but also B.D.'s. It denies B.D. the benefits and services of the District based on his association with a person with a disability. *See McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1142 (11th Cir. 2014) ("It is widely accepted that under both [Section 504] and the ADA, non-disabled individuals have standing to bring claims when they are injured because of their association with a disabled person.").

8.     Ms. Ambrose and B.D. seek an injunction under the ADA, Section 504, and Florida law requiring the District to allow Ms. Ambrose to transport B.D. to school via the bus that stops at the front of their neighborhood.

## Jurisdiction and Venue

9.      This action is brought pursuant to the ADA, Section 504, and Florida law.

10.     Jurisdiction is based on 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

11.     The Court may assert supplemental jurisdiction over the state law claim because it is so related to the ADA and Section 504 claims that they form part of the same case or controversy under Article III of the Constitution. *See* 28 U.S.C. § 1367.

12.     Venue in this district is proper under 28 U.S.C. § 1391(b). The District is located in this district, and the events giving rise to this action arose in the district.

## Parties

13.     Ms. Ambrose is a person with multiple disabilities.

14.     Ms. Ambrose has mobility impairments, rheumatoid arthritis, lupus, an anxiety disorder, and a panic disorder.

15.     Ms. Ambrose served in the United States Coast Guard, and her disabilities are service connected. She was honorably discharged and deemed permanently and totally disabled due to service connected disability or disabilities.

16.     B.D. is a five-year-old kindergartener in the District.

3

17.   B.D. has had respiratory issues and has previously been prescribed an inhaler.

18.   B.D. attends Hickory Creek Elementary School.

19.   Ms. Ambrose and B.D. reside at 570 Black Forest Drive, St. Johns, Florida 32259.

20.   The District is a public school district. It is a "public entity" as defined by 42 U.S.C. § 12131.

21.   The District receives federal funding.

22.   The District is located at 40 Orange Street, St. Augustine, FL 32084.

### Statutory Background

23.   "Congress enacted the ADA in 1990 to remedy widespread discrimination against disabled individuals." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674 (2001).

24.   The ADA is "comprehensive in character," providing a "broad mandate" to redress discrimination against persons with disabilities. *Id.* at 674–75.

25.   "The ADA forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodations (Title III)." *Id.* at 675.

4

26.    Title II of the ADA "protects any qualified individual with a disability involved in any capacity in a public entity's programs, activities, or services." ADA Title II Tech Assist Manual, U.S. Dep't of Justice (Apr. 6, 2022): https://www.ada.gov/taman2.html#II-3.5000.

27.    "Public schools . . . are public entities under Title II." *Schwarz v. The Villages Charter Sch., Inc.*, 165 F. Supp. 3d 1153, 1196 (M.D. Fla. 2016).

28.    Title II of the ADA and Section 504, which applies to programs that receive federal funding, provide overlapping protections to persons with disabilities. *Bledsoe v. Palm Beach Cty. Soil & Water Conservation Dist.*, 133 F.3d 816, 821 (11th Cir. 1998) ("Congress intended Title II to work in the same manner as Section 504 of the Rehabilitation Act.").

29.    Under Title II and Section 504, public entities and programs that receive federal funding commit unlawful discrimination if they fail to make "reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the [entity or program] can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

30.    Consistent with their broad remedial mandates, the ADA and Section 504 protect not only persons with disabilities but also certain non-

5

disabled persons.  Under the statutes, "non-disabled individuals have standing to bring claims when they are injured because of their association with a disabled person." *McCullum*, 768 F.3d at 1143; *cf. Tugg v. Towey*, 864 F. Supp. 1201, 1208 (S.D. Fla. 1994) (holding that non-disabled parents had valid ADA claims "based upon [their] association with their daughter and grandson who are deaf or hearing impaired").

## Statement of Facts

31.    Under Florida law, school districts do not receive state funding for transporting students who live less than two miles from their school. *See* § 1011.68, Fla. Stat.

32.    Even so, districts routinely provide transportation to families who are ineligible for state funding. In 2008, for example, such families comprised "7.39% of total ridership" on school busses.[1]

33.    The District has a policy of not providing school-bus transportation to families who live less than two miles from a school.

34.    The District has made exceptions to that policy for parents who are not disabled.

---

[1] 2010 Educ. Fact Sheet on Transp., Fla. House of Reps. (Apr. 3, 2022): https://www.myfloridahouse.gov/FileStores/Web/HouseContent/Approved/Web%20Site/education_fact_sheets/2011/documents/2010-11%20Student%20Transportation.3.pdf.

35.     B.D. attends Hickory Creek Elementary School in the District.

36.     Ms. Ambrose and B.D. live in a subdivision near Hickory Creek.

37.     The District transports some students in the subdivision to Hickory Creek.

38.     The District has a bus stop at the front of the subdivision for those students.

39.     The bus stop is about a quarter of a mile from Ms. Ambrose and B.D.'s home.

40.     The District does not allow Ms. Ambrose and B.D. to use the bus stop because their house is 1.9 miles from Hickory Creek.

41.     The District does not transport B.D. to and from school.

42.     Because of her disabilities, Ms. Ambrose cannot consistently transport B.D. to and from school.

43.     Ms. Ambrose suffers from debilitating pain due to her lupus and rheumatoid arthritis, and many days, she is unable to leave her home.

44.     Even when she is able to leave her home, Ms. Ambrose's mobility impairments prevent her from walking B.D. to school, and B.D. cannot walk to school on his own.

45.     B.D. is five years old, and walking 1.9 miles to and from school by himself is not only physically impracticable but also dangerous. B.D. is less

than four feet tall, with limited capacity to walk long distances, and walking to school would require him to, among other things, walk along a high-speed, busy state road and near a wooded area that is populated with wild animals.[2]

46.    Nor can Ms. Ambrose drive B.D. to school every day. Ms. Ambrose's mobility and related impairments include, among other conditions, peripheral neuropathy and drop foot. She regularly experiences numbness, pain, and spasm in her limbs. And sitting with such severe pain sometimes results in panic attacks. Her conditions prevent her from driving B.D. to school, waiting in the drop-off line, and returning home.

47.    As a result, Ms. Ambrose lacks a consistent means of transporting B.D. to and from school.

48.    Each week, Ms. Ambrose must beg family members and neighbors for assistance with transporting B.D.

49.    Sometimes Ms. Ambrose is unable to secure transportation for B.D.

---

[2] Even the Florida Department of Education recognizes that it is unsafe for young children to walk to school alone. *See* Fla. Dep't of Educ. Off. of School Transp. Mgmt., Off. of Safe Schools, *Are We There Yet?: Staying Safe Between Home and School* (Apr. 7, 2022): https://www.stjohns.k12.fl.us/transportation/safety/ ("Children under 10 years of age are developmentally limited when it comes to judging speed and distance accurately.").

50.    The lack of consistent transportation has caused B.D. to suffer anxiety: he is constantly anxious about how he will get to school and who will pick him up at the end of the day.

51.    In fall 2021, at the start of B.D.'s kindergarten year, Ms. Ambrose requested that the District waive the two-mile rule as applied to her in light of her disabilities.

52.    At that time, the District had a "hardship exemption" to the two-mile rule. Ms. Ambrose sought the exemption.

53.    The District denied Ms. Ambrose's request, and soon thereafter, it removed the hardship exemption from its policies.

54.    Ms. Ambrose continued to struggle to transport B.D. to and from school. On multiple occasions, he missed school due to lack of transportation.

55.    In winter 2021, Ms. Ambrose requested that the District provide her a reasonable modification to the two-mile rule by allowing B.D. to use the bus stop at the front of their subdivision.

56.    The District denied the request, and it did not offer to provide any alternative accommodations.

57.    In March 2022, Ms. Ambrose requested that the District revisit the denial, and she explained to the District that the denial violated her and B.D.'s rights.

58.   The District, however, ignored Ms. Ambrose's request.

59.   At no point has the District offered Ms. Ambrose an accommodation.

60.   The District's refusal to modify the two-mile rule denies Ms. Ambrose equal access to the educational and transportation programs and services that the District provides families in St. Johns County.

61.   The programs and services benefit both parents and students, yet solely because of Ms. Ambrose's disabilities, she is unable to equally access the programs and services. *See DeSantis v. Fla. Educ. Ass'n*, 306 So. 3d 1202, 1223 (Fla. 1st DCA 2020) (explaining that both parents and students have an interest in public-education services); *S.K. v. N. Allegheny Sch. Dist.*, 146 F. Supp. 3d 700, 714–15 (W.D. Pa. 2015) (recognizing that school-bus transportation is a benefit for both parents and students); *cf.* §§ 1014.04, 1014.05, Fla. Stat. (providing that under Florida law, parents have a legal interest in their child's educational services).

62.   The District's transportation system, for example, assists parents with complying with Florida's compulsory attendance law. *See* § 1003.21, Fla. Stat. Under the system, all parents who live more than two miles from a school receive access to school-bus transportation, but those who live less than two miles from the school do not. Those parents can walk or drive their children to

10

school. Absent a modification, that scheme "subject[s] [Ms. Ambrose] to discrimination . . . by reason of" her disabilities. *See* 42 U.S.C. § 12132. Other parents have access to a means to transport their children, but Ms. Ambrose— solely because of her disabilities—does not.

63.    The District's refusal to modify the two-mile rule also impedes B.D.'s access to the District's programs and services based on his mother's disabilities. Simply put, because B.D.'s mother has a disability, he is denied equal access to the District's programs and services.

64.    Allowing Ms. Ambrose and B.D. to use a school-bus stop at the front of their subdivision would not fundamentally alter the nature of the District's transportation services.

## COUNT I:
## VIOLATIONS OF THE ADA

65.    The factual averments set forth in the paragraphs above and below are re-alleged and incorporated herein by reference.

66.    The ADA affords protections to Ms. Ambrose and B.D.

67.    Ms. Ambrose is a qualified person with a disability, as that term is defined in the ADA, 42 U.S.C. § 12102, because she has impairments that substantially limit one or more major life activities, such as performing

manual tasks, and she is otherwise qualified to benefit from the District's programs and services.

68.    B.D., based on his familial association with a person with a disability, has claims under the ADA separate and apart from those of Ms. Ambrose.

69.    The District has violated the ADA by denying Ms. Ambrose's request to modify its two-mile rule.

70.    Allowing B.D. to use a bus stop that is about a quarter mile from his and Ms. Ambrose's home is a reasonable modification to the policy.

71.    Under Title II of the ADA, the District has an affirmative duty to make reasonable modifications in its policies and programs to avoid discrimination on the basis of disability.

72.    By failing to modify the two-mile rule, the District has failed to fulfill that duty and, by reason of Ms. Ambrose's disabilities, "denied [her] the benefits of [its] services, programs, or activities." *See* 42 U.S.C. § 12132.

73.    By failing to modify the two-mile rule, the District has also "subjected [Ms. Ambrose] to discrimination" by reason of her disabilities. *See id.*

74.    By failing to modify the rule, the District has "exclude[d] or otherwise den[ied] equal services, programs, or activities to [B.D.] because of

the known disability of" Ms. Ambrose, "an individual with whom [B.D.] is known to have a relationship or association." 28 C.F.R. § 35.130(g).

75.    The District has been deliberately indifferent to Ms. Ambrose's and B.D.'s rights under the ADA. Its officials knew the refusal to modify the rule violated Ms. Ambrose's and B.D.'s rights, and they knew the refusal harmed Ms. Ambrose and B.D., but the officials nevertheless continued to deny the modification.

76.    The District's ADA violations are causing ongoing irreparable harm to Ms. Ambrose and B.D.

77.    The violations cause Ms. Ambrose daily anxiety about how she will transport B.D. to school, and they stigmatize her, forcing her to beg others for assistance. The violations also cause Ms. Ambrose distress over the possibility of being in violation of Florida's compulsory attendance law.

78.    The violations are impeding B.D.'s ability to attend school, resulting in educational loss, and they are causing him to suffer anxiety about how he will access school each day.

## COUNT II:
## VIOLATIONS OF SECTION 504

79.   The factual averments set forth in the paragraphs above and below are re-alleged and incorporated herein by reference.

80.   Section 504 affords protections to Ms. Ambrose and B.D.

81.   Ms. Ambrose is disabled, as that term is defined in 29 U.S.C. § 705(20) because she has impairments that substantially limit one or more major life activities, such as performing manual tasks, and she is otherwise qualified to benefit from the District's programs and services.

82.   B.D., based on his familial association with a person with a disability, has claims under Section 504 separate and apart from those of Ms. Ambrose.

83.   The District has violated Section 504 by denying Ms. Ambrose's request to modify its two-mile rule.

84.   Allowing B.D. to use a bus stop that is a quarter mile from his and Ms. Ambrose's home is a reasonable modification to the policy.

85.   Under Section 504, the District has an affirmative duty to make reasonable modifications in its policies and programs to avoid discrimination on the basis of disability.

86.    By failing to modify the two-mile rule, the District has failed to fulfill that duty and, by reason of Ms. Ambrose's disabilities, "denied [her] the benefits of" its programs or activities. *See* 29 U.S.C. § 794(a).

87.    By failing to modify the two-mile rule, the District has also "subjected [Ms. Ambrose] to discrimination" by reason of her disabilities. *See id.*

88.    By failing to modify the rule, the District has "exclude[d] or otherwise den[ied] equal services, programs, or activities to [B.D.] because of the known disability of" Ms. Ambrose, "an individual with whom [B.D.] is known to have a relationship or association." 28 C.F.R. § 35.130(g).

89.    The District has been deliberately indifferent to Ms. Ambrose's and B.D.'s rights under Section 504. Its officials knew the refusal to modify the rule violated Ms. Ambrose's and B.D.'s rights, and they knew the refusal harmed Ms. Ambrose and B.D., but the officials nevertheless continued to deny the modification.

90.    The District's Section 504 violations are causing ongoing irreparable harm to Ms. Ambrose and B.D.

91.    The violations cause Ms. Ambrose daily anxiety about how she will transport B.D. to school, and they stigmatize her, forcing her to beg others for

assistance. The violations also cause Ms. Ambrose distress over the possibility of being in violation of Florida's compulsory-attendance laws.

92.     The violations are impeding B.D.'s ability to attend school, resulting in educational loss, and they are causing him to suffer anxiety about how he will access school each day.

**COUNT III:**
**VIOLATIONS OF ARTICLE I, SECTION II OF**
**THE FLORIDA CONSTITUTION**

93.     The factual averments set forth in the paragraphs above and below are re-alleged and incorporated herein by reference.

94.     Article I, Section II of the Florida Constitution prohibits discrimination against persons with disabilities. *See* Art. I, § 2, Fla. Const. ("No person shall be deprived of any right because of race, religion, national origin, or physical disability.").

95.     Persons with disabilities are a protected class under Article I, Section II.

96.     Ms. Ambrose is a member of that class.

97.     The District has violated Ms. Ambrose's rights under Article I, Section II by subjecting her to a discriminatory school transportation system. The system discriminates against parents like her who have disabilities.

98.    The District has violated Ms. Ambrose's rights under Article I, Section II by refusing to afford her access to the District's transportation services.

99.    The District has afforded similarly situated non-disabled parents access to its transportation services.

100.    The District denied Ms. Ambrose access to its transportation services based on her disabilities.

101.    Both the District's two-mile rule and its implementation of the rule deny Ms. Ambrose equal protection under the law.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Ambrose and B.D. request the following relief:

1. Injunctive relief requiring the District to provide a reasonable modification to the two-mile rule;

2. Compensatory damages;

3. Declaratory relief;

4. Reasonable attorney fees and litigation costs incurred in prosecuting this action; and

5. Such other relief as the Court deems appropriate.

Plaintiffs demand a jury trial for all issues for which a jury trial is permitted.

17

Respectfully submitted,

*/s/ Kevin A. Golembiewski*
Kevin A. Golembiewski
FL Bar No. 1002339
Lauren Eversole
FL Bar No. 120245
Disability Rights Florida
1000 N. Ashley Drive
Tampa, FL 33602
850-488-9071 ext. 9735
keving@disabilityrightsflorida.org

*Counsel for Plaintiffs*

Dated: April 7, 2022