# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

**ASHTON AMBROSE individually
and as parent for B.D.,**

       Plaintiffs,               Case No.: 3:22-cv-392-MMH-PDB

v.

**ST. JOHNS COUNTY SCHOOL
DISTRICT,**

       Defendant.

_____/

## <u>MOTION TO DISMISS OR FOR JUDGMENT ON THE PLEADINGS</u>

     Defendant, **ST. JOHNS COUNTY SCHOOL DISTRICT**[1] ("Defendant"),

pursuant to <u>Fed</u>. <u>R</u>. <u>Civ</u>. <u>P</u>. 12(b)(6) and 12(c), and Local Rule 3.01, moves to

dismiss or for judgment on the pleadings Plaintiffs' Corrected Complaint for

Declaratory and Injunctive Relief ((Doc. 11) hereinafter "Complaint"), and in

support thereof states as follows:

---

[1] Plaintiffs' Complaint attempts to bring claims against the "St. Johns County School District." However, the St. Johns County School District is not a legal entity with the capacity to sue and be sued, and rather, denotes the geographic region within which the St. Johns County School Board (the entity which does have the capacity to sue and be sued) operates. For this reason alone, Plaintiffs' Complaint is due to dismissed. *See* Fla. Stat., § 1001.41(1) (2021); *see also* <u>Abrams-Jackson v. Avossa</u>, No. 16-81624-CIV-MARRA, 2017 WL 1153895, at *2 (S.D. Fla. Mar. 28, 2017) ("The Court agrees with the Defendants that the school board, as opposed to the school district, is the proper entity to be sued . . . ."). However, for the sake of completeness, this Motion details why, even if Plaintiffs had sued the correct entity, their claims should be dismissed with prejudice for failure to state a cause of action.

1.     On May 6, 2022, Plaintiffs filed their Complaint[2], which attempts to assert the following causes of action against Defendant:

| Count | Claim |
|-------|-------|
| I | Violation of Title II of the ADA (Ambrose) |
| II | Violation of Title II of the ADA – Associational Discrimination (B.D.) |
| III | Violation of Section 504 of the Rehabilitation Act (Ambrose) |
| IV | Violation of Section 504 of the Rehabilitation Act – Associational Discrimination (B.D.) |
| V | Violation of Article I, section 2 of the Florida Constitution (Ambrose) |

2.     The gravamen of Plaintiffs' Complaint is that Defendant discriminated against both Ambrose, a disabled parent, and B.D., her abled-bodied child, in violation of Title II of the ADA, Section 504 of the Rehabilitation Act, and the Florida Constitution, when it denied Ambrose's request to allow B.D. to ride the bus to and from school. Plaintiffs allege that even though Ambrose's home is located within two miles of B.D.'s school—an area designated by the Legislature as a "reasonable walking distance" from B.D.'s school—Ambrose (and by association B.D.) must be permitted to use a bus stop close to Ambrose's home because that is a reasonable accommodation to which Ambrose (and by association B.D.) is entitled.

3.     Plaintiffs' claims are due to be dismissed because, as explained in more detail below, Plaintiffs are not entitled to the service for which they have

---

[2] Plaintiffs' Initial Complaint (Doc. 1) and Plaintiffs' Amended Complaint (Doc. 5) were struck by this Court for violation of the rules against "shotgun" pleadings and failure to follow this Court's Order, respectively. (Doc. 4; Doc. 10). Thereafter, at its sua sponte hearing, this Court ordered Plaintiffs to file a "Corrected" Complaint and Defendant to respond to Plaintiffs Corrected Complaint within 21 days of it being filed. (Doc. 10).

requested an accommodation, Plaintiffs are not entitled to the accommodation of their choosing and have not otherwise identified a reasonable accommodation, and Defendant has applied the "two mile" rule equally to all parents within the District, regardless of ability.  Additionally, because amendment would be futile, Plaintiffs' Complaint should be dismissed with prejudice.

**WHEREFORE**, Defendant respectfully requests entry of an Order dismissing Plaintiffs' Complaint with prejudice or, alternatively, that judgment on the pleadings be granted in favor of Defendant, along with such other and further relief this Court deems just and proper.

## BACKGROUND AND FACTS[3]

Generally, pursuant to section 1, article IX of the Florida Constitution, "Adequate provision shall be made by law for a uniform, efficient, safe, secure, and high-quality system of free public schools that allows *students* to obtain a high-quality education . . ." Fla. Const., art. IX, § 1. (emphasis added). And, while "all K-12 public school students are entitled to a uniform, safe, secure, efficient, and high-quality system of education," "parents are responsible to ready their children for school." Fla. Stat., § 1002.20 (2021).  Parents are additionally "responsible for the child's school attendance as required by law." *Id.* at § 1003.24.

Specifically, as it relates to school transportation, in pertinent part, "[d]istrict school boards . . . shall provide transportation for each student  . . . in

---

[3] The following facts are derived from the Complaint, unless otherwise noted. No part of this motion or its factual recitation should be deemed as an admission that the facts pled are true.

kindergarten through grade 12 membership in a public school when, and only when, transportation is necessary to provide adequate educational facilities and opportunities which otherwise would not be available and to transport students whose homes are more than a reasonable walking distance, as defined by rules of the State Board of Education, from the nearest appropriate school." Fla. Stat., § 1006.21 (3)(a). A reasonable walking distance has been defined by the State Board of Education as more than two miles from the students' home. Rule 6A-3.001(3), Fla. Admin. Code (2021) (hereinafter referred to as "Two Mile Rule").

The allegations assert that Plaintiff, Ambrose, is a disabled parent to Plaintiff, B.D., a five-year-old able-bodied student who attends elementary school within St. Johns County. (Doc. 11 at ¶ 1). Ambrose lives approximately 1.9 miles from B.D.'s school. *Id.* at ¶ 4. Because of Ambrose's proximity to B.D.'s school, Defendant does not transport B.D. to school. *Id.* at ¶¶ 40-41. As a result of her disabilities, Ambrose has difficulty consistently transporting B.D. to school. *Id.* at ¶ 47. Therefore, Ambrose has had to rely on family members and neighbors for assistance with transporting B.D. to school, which "sometimes" Ambrose is unable to secure. *Id.* at ¶¶ 48-49.

Plaintiffs further allege that B.D. is unable to walk long distances and, therefore, cannot walk to school alone. *Id.* at ¶ 45. Additionally, there are certain conditions which may make it dangerous for B.D. to walk to school. *Id.*

In the Fall of 2021, Ambrose applied for Defendant's Provisional Transportation Waiver Program ("PTWP"), seeking an exemption to the two-mile

4

rule. *Id.* at ¶ 55. Defendant denied Ambrose's request because Defendant's PTWP only applies to those students who live farther from two miles away from the school. *See* St. Johns County School District, Provisional Transportation Waiver Program (May 25, 2022) https://www.stjohns.k12.fl.us/transportation/ptwaiver/ ("Students enrolled in the St. Johns County School District who are eligible for transportation services in accordance with Florida's Two (2) Mile Rule and Gabby's Law are eligible for Provisional Transportation Waivers per the Provisional Transportation Waiver program").[4] Defendant has not revised the PTWP since August 9, 2021. *Id.* (noting policy was updated on August 9, 2021).

## MEMORANDUM OF LAW

### I.    Standard for Evaluating a Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff is "obligated to provide the 'grounds' for entitlement to relief, and 'a formulaic recitation of the elements of a cause of action will not do.'" *UMG Recordings, Inc. v. Bright House Networks, LLC*, No. 8:19-cv-710-MSS-TGW, 2020 WL 3957675, at *2 (M.D. Fla. July 8, 2020) (quoting *Berry v. Budget Rent A Car Sys., Inc.*, 497 F. Supp. 2d 1361,

---

[4] Defendant respectfully requests the Court take judicial notice of the information included on its website regarding the PTWP, pursuant to Federal Rule of Evidence 201, because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned, namely Defendant's website. In considering a motion to dismiss, a Court is permitted to take judicial notice of information available on government websites. *Chapman v. Abbott Labs.*, 930 F. Supp. 2d 1321, 1323 (M.D. Fla. 2013) (granting motion to dismiss and taking judicial notice of prescription label publicly available on the FDA's website). "If a court takes judicial notice of documents pertinent to a motion to dismiss, it need not convert the motion to dismiss into a motion for summary judgment." *Id.*

1364 (S.D. Fla. 2007)). While the well-pleaded facts must be accepted as true and construed in favor of the plaintiff, "the court should not assume that the plaintiff can prove facts that were not alleged." *Id.* And, "dismissal is warranted if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue which precludes relief." *Id.* (citing *Neitzke v. Williams*, 490 U.S. 319, 326 (1989)).

## II.    Ambrose's ADA, 504, and Florida Constitution Claims

Claims under Title II of the ADA and Section 504 are governed by the same standards. *J.S., by and through J.S., III v. Houston Cnty. Bd. of Ed.*, 877 F.3d 979, 985 (11th Cir. 2017).

> To state a claim under Title II and § 504, a plaintiff must demonstrate "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." *Bircoll v. Miami-Dade Cty.*, 480 F.3d 1072, 1083 (11th Cir. 2007).

*Id.*    Disability discrimination claims brought under the Florida Constitution's Equal Protection Clause (art. 1, § 2), are construed in conformity with the ADA. *Wilson v. Sarasota Cnty.*, No. 8:10–cv–0489–T–27EAJ, 2011 WL 5117566 (M.D. Fla. Oct. 25, 2011) (dismissing plaintiff's equal protection disability discrimination claims under the Florida Constitution because plaintiff failed to state a claim under the ADA).

### A.    Ambrose is Not a "Qualified Individual" and Was Not Excluded From Transportation Services "by Reason" of Her Disability

Initially, Ambrose is not entitled to a public education. As a court in the Northern District of Georgia recently explained, in a case with nearly identical facts:

> As an initial matter, the Court finds Ms. Todd is not entitled to the public benefit she seeks. Ms. Todd seeks "the benefit of a public education for her children." Public education, however, is provided to students, not the parents of students. "[I]t is the student—not his parents—who has a right to a free public education." *Boster v. Philpot*, 645 F.Supp. 798, 807 (D. Kan. 1986) (citing *Goss v. Lopez*, 419 U.S. 565, 581, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975)); *see Brian A. ex rel. Arthur A. v. Stroudsburg Area Sch. Dist.*, 141 F.Supp.2d 502, 507 (M.D. Pa. 2001) ("The right to a free public education is a right which belongs to the student and not their parents."); *Wells v. Banks*, 153 Ga.App. 581, 266 S.E.2d 270, 272 (1980) ("[H]aving extended to all children in Georgia the right to an education, the state cannot arbitrarily withdraw that right."). Ms. Todd cannot circumvent the ADA's requirements by somehow combining her protected status as a disabled person with her Children's personal right to an education. Ms. Todd's claim fails because she has not shown she is entitled to the public benefit she seeks. *See Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016) (stating that a disabled plaintiff must show "as a practical matter [he or she] was denied meaningful access to services, programs or activities to which he or she was *legally entitled*" (emphasis added) (internal quotation marks omitted)).

*Todd v. Carstarphen*, 236 F. Supp. 3d 1311, 1329-30 (N.D. Ga. 2017) (footnotes omitted).  The same is true in this case, where the Florida Constitution and the Legislature make clear that it is *students* that are entitled to the benefit of a uniform, efficient, safe, secure, and high-quality public education.

Ambrose's reliance on *DeSantis v. Fla. Educ. Ass'n.*, 306 So. 3d 1202, 1223 (Fla. 1st DCA 2020), is misplaced. Specifically, in *DeSantis*, the First District Court

of Appeal discussed parents' "right to choose the best education setting for their children," in light of making decisions about when, and where, to send their children to school in the midst of a global pandemic. *Id.* And, the First District's decision in that case was entirely consistent with parents' explicit rights with respect to their children's education. *See* Fla. Stat., § 1002.20(6)(a) ("Parents of public-school students may seek any public educational school choice options that are applicable and available to students throughout the state."). An interest in a child's education, and the right to choose where and how to educate a child, however, do not give a parent the right to receive education themselves, or otherwise entitle a parent to transportation services to and from school. *Cf id.* with § 1002.20(22)(a) (providing that "*public school students* shall be provided transportation to school . . .").

Moreover, even if Ambrose was entitled to education or transportation services (she was not), Ambrose was not otherwise qualified to receive transportation services because of the location of her home. "Under Title II, a 'qualified individual with a disability' is "an individual with a disability who, with or without reasonable modifications . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."' *Smith v. Dunn*, No. 2:19-cv-927-ECM, 2021 WL 471187, at *7 (M.D. Ala. Feb. 9, 2021) (quoting 42 U.S.C. § 12131(2)). "While 'rules, policies, [and] practices' may be subject to reasonable modification, 'essential eligibility requirements' are not." *People First of Ala. v. Merrill*, 467 F. Supp. 3d 1179, 1215

(N.D. Ala. 2020) (quoting *Mary Jo C. v. New York State & Local Ret. Sys.*, 707 F.3d 144, 159 (2d Cir. 2013)). "Therefore, a plaintiff who does not meet an essential eligibility requirement is not qualified to state a claim under the ADA." *Id.*

As explained above, an "essential" qualification for transportation services and participation in the PTWP is that an individual reside more than two miles from the school or qualify for transportation services on some other statutory basis. Ambrose has not, and cannot, allege that she met this essential requirement because she, admittedly, lived only 1.9 miles away from the school. And, a waiver of the Two Mile Rule—a fundamental alteration of the program—would have been necessary for Ambrose to be eligible. *See e.g.*, *Pritchard v. Fla. High Sch. Athletic Assn., Inc.,* 371 F. Supp. 3d 1081, 1087 (M.D. Fla. 2019) (concluding plaintiff was not a "qualified individual" for purposes of participation in high school sports because plaintiff had already completed four consecutive years and could only become eligible if four-year limit was waived, which would result in fundamental alteration of program).

Accordingly, because Ambrose cannot meet the minimum eligibility requirements for transportation services, she is not a qualified individual for purposes of her disability discrimination claims. For this reason, Ambrose's reliance on *S.K. v. N. Allegheny Sch. Dist.*, 146 F. Supp. 3d 700, 714–15 (W.D. Pa. 2015), a case involving the district's refusal to transport a disabled child (a qualified individual) to daycare services, is unavailing.

For much the same reason, Ambrose was also not excluded from participation in transportation services "by reason" of her disability. As explained above, Ambrose was not provided transportation services and Ambrose's request via the PTWP was denied because of the location of her home with respect to the school, not because of her disability. Absent the disabilities noted in the Complaint, Ambrose would still not have been eligible for transportation services because of the location of her home. *See Pritchard*, 371 F. Supp. 3d at 1088 (concluding that plaintiff was not excluded from participation by reason of his disability where plaintiff was prevented from participating in high school athletics "not because of his disability, but because he ha[d] already completed four consecutive years").

Thus, Ambrose has failed to state a claim for relief and Ambrose's claims should be dismissed.

### B.   *Ambrose Was Not Denied Meaningful Access to any Benefit*

"[W]hen an individual already has meaningful access to a benefit to which he or she is entitled, no additional accommodation, reasonable or not, need be provided by [the governmental entity]." *Medina v. City of Cape Coral, Fla.*, 72 F. Supp. 3d 1274, 1278 (M.D. Fla. 2014). "The unavailability of [a particular] method of getting [B.D.] to school does not, by itself, establish that [B.D.] lack[s] meaningful access to school." *Todd*, 236 F. Supp. 3d at 1330.

As explained in *Todd*:

> Many parents are unable to walk their children to and from school every day. There are any number of other ways to get a child to school, including making arrangements for the child to walk to school independently, or seeking assistance from others such as family, friends, community members, charities or even taxi services.

*Id.*

In the Complaint Ambrose alleges that she is "sometimes" unable to secure transportation for B.D. to school through family and neighbors. (Doc. 11 at ¶ 49). Additionally, Ambrose alleges that on "multiple occasions" B.D. missed school due to lack of transportation. *Id.* at ¶ 54. However, the Complaint does not state specifically how many days B.D. has been unable to attend school because of Ambrose's disability or that B.D.'s attendance at school has otherwise fallen below the compulsory attendance requirements set by the Legislature. *See* Fla. Stat. § 1003.21(1)(a)1. (requiring that "[a]ll children who have attained the age of 6 years . . . are required to attend school regularly during the entire school term"). Nor does the Complaint allege that B.D.'s teacher notified the principal about B.D.'s nonattendance at school or that a truancy petition was filed as to B.D. *See* Fla. Stat. § 1003.27(2)(a);(3) (requiring a student's teacher to notify the principal if a student has more than 5 unexcused absences during any month or more than 10 unexcused absences during any 90-day period and a truancy petition to be filed if a student has more than 15 unexcused absences in a 90-day period, respectively).

Meaningful access does not require that an individual always be provided with convenient access. It stands to reason that a parent, regardless of ability, may

on occasion find it difficult to transport a child to school, or a child may be unable to attend school "sometimes" for any number of transportation-related reasons, such as car trouble or coordinating multiple schedules.  Nor is an individual denied meaningful access when their disability makes it "more difficult" to access a benefit and an accommodation would make it "easier" to access the benefit. *See Todd*, 236 F. Supp. 3d at 1329 (citing *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1086 (11th Cir. 2007) (explaining Bircoll was not denied the benefit of effective communication, even though communication was more difficult for him" . . . "and even though communication would have been easier for him—and more effective— if [an accommodation] had been provided.")).

The point being, even viewing the facts in the Complaint in the light most favorable to Ambrose, because B.D. makes it to and from school "most of the time," "with assistance," neither Ambrose nor B.D. were denied meaningful access to public education on the basis of Ambrose's disability. *See id.* (quoting *Ganstine v. Sec'y, Fla. Dep't of Corr.*, 502 Fed. Appx. 905, 910 (11th Cir. 2012)) (holding inmate was not denied meaningful access to prison services "because, with the assistance of inmate orderlies, he could go 'wherever he needed to go' 'most of the time'").

And, in any event, Ambrose is not entitled to the accommodation of her choosing. "Meaningful access . . . does not require the governmental entity to provide *every* requested accommodation." *Medina*, 72 F. Supp. 3d at 1278. Indeed, "a reasonable accommodation need not be perfect or the one most strongly preferred by the plaintiff . . . ." *Todd*, 236 F. Supp. 3d at 1334 (quoting *Wright v.*

*N.Y. State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016)). It need only be "effective." *Id.* Moreover, meaningful access is not synonymous with "equal access" or "preferential treatment." *Id.*

As made clear in the Complaint, Ambrose has requested one, and only one, accommodation be made by Defendant—to permit B.D. to utilize a bus stop close to his home. But, Ambrose's conclusory (and one-sided) contention that this accommodation is reasonable does not make it so. "Accommodations are not reasonable if they impose undue financial or administrative burdens, or if they require a fundamental alteration in the nature of the program." *Pritchard v. Fla. High Sch. Athletic Assn., Inc.,* 371 F. Supp. 3d 1081, 1087 (M.D. Fla. 2019) (internal quotations and citation omitted); *see Merrill*, 467 F. Supp. 3d at 1217 (same).

Here, Ambrose has not pled and cannot establish that a waiver of the Two Mile Rule (her requested accommodation) is reasonable under the circumstances. Importantly, a waiver of the Two Mile Rule would require Defendant to modify an essential requirement of its transportation program. Additionally, the Complaint makes no mention of whether there is room on the bus which Ambrose claims B.D. is entitled to ride, nor does it contend with the fact that Defendant is not provided funding to transport students to school who live within two miles of the school, absent certain extenuating circumstances. *See* Fla. Stat., § 1011.68(1)(a) (establishing means by which transportation funding is determined). Defendant has good reasons, separate and distinct from intentional discrimination, for refusing to make exceptions to the Two Mile Rule—namely, to maintain the bright

line established by the Legislature as to which students are entitled to transportation and which students are not.

Ambrose's claim that Defendant was required to offer Ambrose additional, different accommodations, when it denied her request for the PTWP (a program to which she was not entitled) is similarly unpersuasive. The "ADA does not require clairvoyance" on part of Defendant. *Smith*, 2021 WL 4845123 at *11 ("public entities are not required to guess at what accommodation they should provide." (internal quotations and citation omitted)).

Defendant had no obligation to offer Ambrose a different accommodation without otherwise being provided the specifics about the type of accommodation which would have been effective for Ambrose. *See Medina*, 72 F. Supp. 3d at 1278 (explaining a plaintiff must show that she requested an accommodation or that the need for such an accommodation was obvious). To the extent a different accommodation would have sufficed, it was incumbent upon Ambrose to either request the alternate accommodation or provide sufficient information to Defendant to allow it to determine an available alternative. Where, however, Ambrose has only requested one accommodation, which Ambrose has not and cannot establish would have been reasonable under the circumstances, Ambrose's claims are due to be dismissed.

### C.    *Ambrose Was Not Discriminated Against on the Basis of Her Disability*

As an initial matter, Ambrose's claim of intentional discrimination necessarily fails because Ambrose was not subject to differential treatment on the basis of her disability. Rather, as is made clear in the Complaint and above, Ambrose was not provided transportation services because her home was located less than two miles from the school. And, Defendant denied Ambrose's request through the PTWP because that program does not operate as a waiver of the Two Mile Rule, as Ambrose contends, but rather, as an option for those who are otherwise eligible to receive transportation services to receive a waiver of certain transportation rules, for example, to allow a kindergarten student to be picked up by an older sibling, rather than a parent. *See e.g.*, *Pritchard*, 371 F. Supp. 3d at 1088 (concluding that plaintiff was not excluded from participation by reason of his disability where plaintiff was prevented from participating in high school athletics "not because of his disability, but because he ha[d] already completed four consecutive years").

Additionally, Ambrose's conclusory allegation that, on occasion, students within two miles from a school are transported, does not save her discrimination claim from dismissal. In fact, the document cited by Ambrose explains that the most common reason a child is transported to school, despite residing less than two miles away, is hazardous walking conditions.[5]

---

[5] *See* 2010 Educ. Fact Sheet on Transp., Fla. House of Reps. at 128-29 (May 25, 2022) https://www.myfloridahouse.gov/FileStores/Web/HouseContent/Approved/Web%20S

The Complaint does not allege that Ambrose has notified Defendant that she believes the walking conditions from her home to the school are hazardous. Moreover, to the extent the Complaint alleges it may be unsafe for B.D. to walk to school from his home because of the speed limit on the road and the presence of wild animals on his path (Doc. 11 at ¶ 45), nothing prohibits Ambrose from pursuing that claim through the appropriate channels. *See* Fla. Stat., § 1006.23, Fla. Stat. (defining hazardous walking conditions and identifying process by which such claims may be pursued). However, Ambrose's conclusory allegation that some students with non-disabled parents who live within two miles of the school receive transportation, without more, cannot support her claims of disability discrimination.

Even if Ambrose could show she was subject to disparate treatment (she was not), to allege a claim of intentional discrimination, Ambrose must demonstrate that an "appropriate person" had actual notice of Ambrose's discrimination and was deliberately indifferent to the discriminatory misconduct. *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 349 (11th Cir. 2012). "[S]chool administrators will only be deemed deliberately indifferent if their response to the harassment or lack thereof is clearly unreasonable in light of the known

---

ite/education_fact_sheets/2011/documents/2010-11%20Student%20Transportation.3.pdf (explaining hazardous walking conditions and the process for identifying and correcting the same and the requirement to provide transportation to certain students until the conditions are corrected).

circumstances." *Doe v. Sch. Bd. of Broward Cnty.*, 604 F.3d 1248, 1259 (11th Cir. 2010) (internal quotes omitted).

Here, the Complaint is devoid of any allegations that could be construed as intentional discrimination as to Ambrose. At most, the Complaint alleges that Defendant should have known Ambrose would be harmed if not permitted to use the bus stop by her home. These allegations, even accepted as true, do not evidence either an intent to discriminate or that the school turned a blind eye toward any harassment or discrimination. At most, they represent a misunderstanding of Ambrose's unique needs. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). Indeed, "[a]ctions and decisions by officials that are merely inept, erroneous, ineffective or negligent do not amount to deliberate indifference." *Dallas Indep. Sch. Dist.*, 153 F.3d at 219; *see also J.P.M.*, 916 F. Supp. 2d at 1322 (rejecting ADA and 504 claims where there was no evidence of intentional discrimination or deliberate indifference).

Accordingly, for the reasons stated above Ambrose's ADA, 504, and Florida Constitution claims should be dismissed with prejudice.

## III.   B.D.'s Associational Discrimination ADA and 504 Claims

### A.   *Associational Discrimination Claims Are Not Cognizable in This Case*

B.D.'s associational discrimination claims under the ADA and Section 504 are not cognizable in this case. While Titles I and III of the ADA explicitly reference and prohibit discrimination against nondisabled individuals on the basis of their

association with a disabled individual, "Title II does not include this enlarging language support[ing] Congressional intent to omit associational discrimination claims from Title II." *Todd*, 236 F. Supp. 3d at 1339. The same can be said for section 504 claims. *Id.* at 1341-42 (concluding that the "Rehabilitation Act does not protect nondisabled individuals from discrimination in the Title II context"). Accordingly, because B.D. admittedly is not otherwise qualified for protection under the ADA or section 504, B.D.'s associational discrimination claims are due to be dismissed with prejudice.

**B.    To the Extent B.D.'s Claims are Premised on His Own Disability, B.D. Has Not Exhausted Available Administrative Remedies**

Moreover, to the extent the Complaint alleges that B.D. is unable to walk to school because he has a disability,[6] B.D.'s disability discrimination claims are an improper attempt to circumvent the administrative exhaustion requirements of the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, et seq. ("IDEA"). The IDEA was created to provide federal assistance to all states that provide children with disabilities a free appropriate public education ("FAPE"). *Draper v. Atlanta Indep. Sch. Sys.*, 518 F.3d 1275, 1280 (11th Cir. 2008).

When the central tenant of a lawsuit is the denial of the IDEA's guarantee of FAPE, exhaustion of administrative remedies is required. *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 746 (2017). A plaintiff may not escape exhaustion requirements

---

[6] *See e.g.*, (Doc. 11 at ¶ 11; 45) (noting that B.D. has breathing issues, is unable to walk long distances, and is constantly anxious about getting to and from school).

simply by bringing claims under statutes other than the IDEA, including the ADA and section 504. *Id.* at 754; *see also*, *T.W. v. Franklin Cnty. Sch. Bd.*, No. 4:16cv29-RH/CAS, 2016 WL 4536408 at *2 (N.D. Fla. Aug. 30, 2016) ("The exhaustion requirement also applies to claims under [Fla. Stat. § 1000.05]"); *M.T.V. v. DeKalb Cnty. Sch. Dist.*, 446 F.3d 1153, 1158 (11th Cir. 2006). The exhaustion requirement applies equally to parents' claims born out of issues relating to their children's education. *M.T.V.*, 446 F.3d at 1157-58 (holding parents' retaliation claims under 504 and the ADA were subject to exhaustion requirement).

In the instant matter, Plaintiffs have not alleged they exhausted administrative remedies; instead, they seek to avoid administrative exhaustion requirements by attempting to masquerade FAPE-based claims as ADA and Section 504 claims. However, to the extent the Complaint alleges that B.D. is himself disabled, the core of Counts II (ADA) and IV (504) are that B.D. was denied "a proper, safe, and free appropriate public education." These are exactly the types of claims that can and must be addressed at an appropriate administrative proceeding in the first instance. *See Hayes v. DeSantis*, No. 1:21-cv-22863-KMM, 2021 WL 4236698, at *11 (S.D. Fla. Oct. 29, 2021) (concluding that plaintiffs were required to exhaust administrative remedies where the "unique problems facing [the] Plaintiffs" required unique solutions tailored to each child's "individual needs").

### C.     *Plaintiff, B.D. Was Not Denied Meaningful Access to a Benefit*

Finally, even if B.D.'s associational discrimination claims were cognizable (they are not), B.D.'s claims are due to be dismiss. "[N]on-disabled persons have [associational] standing . . . only if they allege that they were personally excluded, personally denied benefits, or personally discriminated against because of their association with a disabled person." *McCollum v. Orlando Reg. Healthcare Sys., Inc.*, 768 F.3d 1135, 1143 (11th Cir. 2014). For the same reasons stated above, the Complaint also fails to allege that B.D. was denied meaningful access to any benefit to which he was entitled. *See supra* § IB & C.

## CONCLUSION

For the foregoing reasons, Defendant, **ST. JOHNS COUNTY SCHOOL DISTRICT** respectfully requests this Honorable Court to grant the instant motion, dismiss Plaintiffs' Complaint with prejudice[7], and grant such other relief as this Court deems proper.

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), the undersigned certifies Plaintiffs' Counsel were contacted and is authorized to represent that Plaintiffs oppose the relief requested in this Motion.

---

[7] Because neither Ambrose nor B.D. are entitled to the benefits for which they seek an accommodation, amendment would be futile, and dismissal with prejudice is appropriate. *See L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1332 (11th Cir 2020) ("[l]eave to amend would be futile if an amended complaint would still fail at the motion-to-dismiss or summary-judgment stage").

Respectfully submitted this 27th day of May, 2022,

/s/ Kristen C. Diot
**KRISTEN C. DIOT**
Florida Bar Number: 0118625
kdiot@sniffenlaw.com
**MICHAEL P. SPELLMAN**
Florida Bar Number:  0937975
mspellman@sniffenlaw.com

**SNIFFEN & SPELLMAN, P.A.**
123 North Monroe Street
Tallahassee, Florida 32301
Telephone: (850) 205-1996
Facsimile: (850) 205-3004

*Counsel for the St. Johns County*
*School Board*

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 27th day of May, 2022, a true and correct copy of the foregoing was electronically filed in the U.S. District Court, Middle District of Florida, using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ Kristen C. Diot
**KRISTEN C. DIOT**