**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ASHTON AMBROSE AND B.D., by and     :
through his parent, Ashton Ambrose,    :
                                           :
       Plaintiffs,             :     Case No:
                                     :     3:22-cv-392-MMH-PDB
     v.                     :
                                         :
ST. JOHNS COUNTY SCHOOL DISTRICT, :
                                         :
       Defendant.             :

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS**
**OR MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendant misunderstands the ADA and Section 504. Their protections are not limited to the most glaring forms of discrimination, where a public entity outright excludes or denies services to a person with disabilities. They both have broad "catch-all" provisions that "prohibit[] all discrimination by a public entity, regardless of the context." *Bledsoe v. Palm Beach Cty. Soil and Water*, 133 F.3d 816, 821–22 (11th Cir. 1998). As a result, the ADA and Section 504 "do[] not limit . . . coverage to conduct that occurs in the 'programs, services, or activities' of a" public entity. *Id.* Whether a person is "entitled" to the entity's services does not matter. If a public entity's policies have "discriminatory effects" or "relegate[]" persons with disabilities to lesser services . . . or other opportunities," the entity violates the ADA and Section 504. 42 U.S.C. § 12101(a)(5).

Ms. Ambrose and B.D. have plausibly alleged that Defendant has subjected them to discrimination. Defendant has adopted a transportation scheme under

which nondisabled parents have ready access to a means to transport their children to school—either by school bus, driving, or walking—but Ms. Ambrose does not. Because she has disabilities, and Defendant has refused to modify its two-mile rule, she has ready access to no means of transportation. The discriminatory effects of the scheme are plain. Ms. Ambrose has to beg others to help her transport B.D. to school, while other parents can transport their children independently. And B.D.— because his mother has disabilities—lacks a consistent means of transportation to and from school, which impedes his access to Defendant's educational program.

"Discrimination against [persons with disabilities] was perceived by Congress to be most often the product, not of invidious animus, but rather of thoughtlessness and indifference—of benign neglect." *Alexander v. Choate*, 469 U.S. 287, 295 (1985). That is the discrimination afoot under Defendant's scheme. The scheme assumes that all parents living less than two miles from their child's school are able to transport their child to and from school. That flawed assumption, and the indifference towards parents with disabilities baked into the scheme, subjects parents like Ms. Ambrose and their children to discrimination.

Defendant's arguments to the contrary are unavailing, particularly at this stage. For example, Defendant asserts that Section 504 does not recognize associational discrimination claims. But the Eleventh Circuit has held that under Section 504, "non-disabled individuals have standing to bring claims when they are injured because of their association with a disabled person." *McCullum v.*

*Orlando Reg'l Healthcare*, 768 F.3d 1135, 1142 (11th Cir. 2014). That ruling disposes of Defendant's argument that B.D. has no legally cognizable claims. Defendant tries to end-run Section 504 by contriving a line that exists nowhere in the statute: it asserts that Section 504 distinguishes between public and private entities, applying different protections against each type of entity. But Section 504 applies the same to all covered entities. Public entities do not have a special status under Section 504—if they accept federal funds, they must abstain from associational discrimination, just like all other entities receiving federal funds.

Defendant also raises a variety of fact-based arguments that are improper at this stage.[1] It contends, for instance, that Ms. Ambrose's requested modification— allowing B.D. to use a bus stop that is a few blocks from his home—is unreasonable. But that is a factual question. *Alumni Cruises v. Carnival Corp.*, 987 F. Supp. 2d 1290, 1305 (S.D. Fla. 2013) ("Generally, whether a proposed modification is 'reasonable' presents a question of fact.").

The motion to dismiss, and the motion for judgment on the pleadings, should be denied. The latter is improper since Defendant has not filed an answer. *See Lillian B. v. Gwinnett Cty. Sch. Dist.*, 631 F. App'x. 851, 852 (11th Cir. 2015).[1]

---

[1] In a footnote, Defendant asserts that this case should be dismissed because the caption names "St. Johns County School District" rather than "St. Johns County School Board." That difference in terminology is not a basis for dismissal. Plaintiffs served the Board, and the Board accepted service. Doc. 9 at 4 (executing service at 40 Orange St., St. Augustine, FL, which is the Board's address). And in numerous other cases, the plaintiffs named "St. Johns County School District" and the case proceeded. *E.g.*, *S.D. v. St. Johns Cty. Sch. Dist.*, 3:09-cv-250 (M.D. Fla.); *E.N. v. St. Johns Cty. Sch. Dist.*, 3:05-cv-1170 (M.D. Fla.); *Miller v. St. Johns Cty. Sch. Dist.*, 3:20-cv-00915 (M.D. Fla.). Plaintiffs can, however, move to amend the case caption to avoid confusion.

## STATUTORY BACKGROUND

The ADA is "comprehensive in character," providing a "broad mandate" to redress disability discrimination. *PGA v. Martin*, 532 U.S. 661, 675 (2001). It "forbids discrimination against disabled individuals in major areas of public life, among them . . . public services (Title II)." *Id.* Title II "protects any qualified individual with a disability involved in any capacity in a public entity's programs, activities, or services." ADA Title II Tech Assist Manual, U.S. DOJ (Jun. 17, 2022): https://www.ada.gov/taman2.html#II-3.5000.

"Congress intended Title II to work in the same manner as Section 504," which applies to federal funding recipients. *Bledsoe*, 133 F.3d at 821. They both "aim to root out disability-based discrimination, enabling each covered person . . . to participate equally to all others in public facilities and federally funded programs." *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 756 (2017).

Under Title II and Section 504, public entities and federally funded programs discriminate if they fail to make "reasonable modifications in policies . . . . when the modifications are necessary to avoid discrimination on the basis of disability, unless the[y] can demonstrate that making the modifications would fundamentally alter the nature of the service." 28 C.F.R. § 35.130(b)(7)(i).

## STANDARD OF REVIEW

A complaint must only state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). "A motion to dismiss should concern only the

complaint's legal sufficiency, and is not a procedure for resolving factual questions or addressing the merits." *Shadlich v. Makers Nutrition*, 2020 WL 5255133, at *1 (M.D. Fla. Sept. 3, 2020). Whether a plaintiff has been denied equal access and whether a requested modification is reasonable are both factual questions. *See Silva v. Baptist Health S. Fla.*, 856 F.3d 824, 836 (11th Cir. 2017) (equal access); *Alumni Cruises*, 987 F. Supp. 2d at 1305 (modifications).

## ARGUMENT

### I.   B.D. HAS STATED PLAUSIBLE CLAIMS FOR RELIEF—ASSOCIATIONAL DISCRIMINATION CLAIMS—UNDER SECTION 504 AND THE ADA.

### A.   B.D.'s associational discrimination claims are cognizable under Section 504 and the ADA.

In a single paragraph, and citing only a non-binding decision from Georgia, Defendant asks this Court to hold that neither Section 504 nor the ADA permit associational discrimination claims. That invitation must be rejected.

**1. Section 504.** It is the law of the Eleventh Circuit that Section 504 recognizes associational discrimination. In *McCullum*, which involved a claim against a public accommodation that received federal funding, the court held that under Section "794a(a)(2), the associational standing provision of [Section 504]," "non-disabled individuals have standing to bring claims when they are injured because of their association with a disabled person." 768 F.3d at 1142–43.

Although B.D. cited *McCullum* in his Complaint, Defendant ignores the decision and relies exclusively on *Todd v. Carstarphen*, 236 F. Supp. 3d 1311 (N.D.

Ga. 2017) in asserting that Section 504 does not recognize associational discrimination. *Todd* was wrongly decided. It considered whether a public entity receiving federal funds discriminated against a parent and her children. The court concluded that associational discrimination claims are not permitted under Section 504 in cases involving public entities but rather are permitted only in the context of ADA Title I (employment) and Title III (public accommodation) cases. 236 F. Supp. 3d at 1341. The court therefore did not apply *McCullum*. But there is no statutory basis for transposing onto Section 504 the ADA's distinctions between employers, public entities, and public accommodations. Section 504 applies the same to "any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The same statutory text governs any such entity—the text of Section 794a(a)(2), "the associational standing provision of" Section 504. *McCullum*, 768 F.3d at 1143. *Todd* should have adhered to *McCullum*, rather than contriving a distinction that exists nowhere in the text of Section 504.

That is what this Court has done. In *Freyre v. Hillsborough County Sheriff's Office*—which involved a public entity—the Court cited *McCullum* and allowed the plaintiff's Section 504 associational discrimination claim to proceed. 2014 WL 6885913, at *5 (M.D. Fla. Dec. 5, 2014).

**2. Title II of the ADA.** Title II's enforcement provision provides that its "remedies, procedures, and rights" are available to "*any* person alleging discrimination on the basis of disability in violation of Title II's nondiscrimination

provision." 42 U.S.C. § 12133 (emphasis added). That broad language permits associational discrimination claims. *See U.S. v. Gonzales*, 520 U.S. 1, 5 (1997) ("[T]he word 'any' has an expansive meaning."). A person alleging associational discrimination is a person alleging discrimination on the basis of disability; she asserts that she is being discriminated against on the basis of another's disability. If Congress did not intend the enforcement provision to allow such claims, it could have easily drafted it to provide a cause of action to only a "person [with a disability] alleging discrimination on the basis of disability." But it did not do so, and this Court should not read that language into the statute.

No circuit court that has considered this issue has. Every one that has addressed whether Title II recognizes associational discrimination has answered the question affirmatively. *See Innovative Health Sys. v. City of White Plains*, 117 F.3d 37, 48 (2d Cir. 1997) ("[B]ecause we have already determined that Title II provides relief to 'any person alleging discrimination,' it is irrelevant whether Title II directly proscribes discrimination based on association with disabled persons."); *Addiction Specialists v. Twp. of Hampton*, 411 F.3d. 399, 405–06 (3d. Cir. 2005); *Helping Hand v. Baltimore Cty.*, 515 F.3d 356, 363 (4th Cir. 2008); *Popovich v. Cuyahoga Cty. Ct.*, 150 F. App'x. 424, 426–27 (6th Cir. 2005); *Hummel v. St. Joseph Cty. Bd. of Comm'rs*, 817 F.3d 1010, 1019 (7th Cir. 2016).

The ADA's broader statutory context supports this reading of Title II. *See Samantar v. Yousuf*, 560 U.S. 305, 319 (2010) ("[W]e read statutes as a whole.").

Section 12201 specifies that "nothing in [the ADA] shall be construed to apply a lesser standard than the standards applied under [Section 504] or the regulations issued by Federal agencies pursuant to" it. 42 U.S.C. § 12201(a); *Bragdon v. Abbott*, 524 U.S. 624, 631–32 (1998) ("The directive requires us to construe the ADA to grant at least as much protection as provided by the regulations implementing the Rehabilitation Act."). Because associational discrimination claims are cognizable under Section 504, they must be permitted under Title II. To hold otherwise would make Title II's protections less robust than Section 504's.

*Todd* concluded that associational discrimination claims are not permitted under Title II because Titles I and III expressly prohibit associational discrimination, while Title II does not. But "Title II does not mirror the structures of Titles I and III." *Arce v. Louisiana*, 2017 WL 5619376, at *9 n.48 (E.D. La. Nov. 21, 2017) (expressly disagreeing with *Todd*'s analysis). It contains a general nondiscrimination prohibition whereas "Titles I and III include extensive rules of construction to explain the scopes of their general nondiscrimination prohibition." *Id.* It therefore does not follow that Congress intended to "excuse similar discriminatory conduct by a public entity simply because such conduct is not spelled out in Title II." *See Innovative Health*, 117 F.3d at 47; *see also* H.R. Rep. No. 101–485(II), at 84 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 367 (Title II's prohibitions are to be "identical to those set out in the applicable provisions of titles I and III of this legislation.").

8

Finally, to the extent that Title II is ambiguous, 28 C.F.R. § 35.130(g), which authorizes associational discrimination claims under Title II, should be afforded deference. *Chevron v. Natural Res. Def. Council*, 467 U.S. 837, 842–43 (1984). Under *Chevron*, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. "[A]dministrative implementation of a particular statutory provision qualifies for *Chevron* deference when . . . Congress delegated authority to the agency generally to make rules carrying the force of law," and the agency interpretation "was promulgated in the exercise of that authority." *U.S. v. Mead Corp.*, 533 U.S. 218, 226–27 (2001).

Here, "Congress expressly authorized the Attorney General to make rules with the force of law interpreting and implementing the ADA provisions generally applicable to public services." *Shotz v. City of Plantation*, 344 F.3d 1161, 1179 (11th Cir. 2003). Moreover, "the DOJ issued its rules contemporaneously with its implementation of these provisions, using conventional notice-and-comment rulemaking procedures." *Id.* Therefore, "the resulting rules are entitled to controlling weight unless they are procedurally flawed, substantively arbitrary, and capricious, or plainly contradict the statute." *Id.* Section 35.130(g) is none of those. It is reasonable, "lawful[,] and represents an authoritative construction of Title II." *See Arce*, 2017 WL 5619376, at *13 (deferring to Section 35.130(g)).

### B.   B.D. has plausibly alleged associational discrimination.

**1.** To state a claim for associational discrimination, a "non-disabled individual" must plausibly allege that she was "personally discriminated against or denied some benefit because of her association with a disabled person." *McCullum*, 768 F.3d at 1142. "Because of" means "but-for" causation. *See McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1077 (11th Cir. 1996).

B.D. has stated such a claim:  Defendant has denied him equal access to its educational programs because his parent has disabilities. "By adopting its transportation system and then failing to modify the [two-mile] rule," Defendant has denied B.D. equal access to the programs. Doc. 11 ¶ 105. Those actions have "imped[ed] B.D.'s ability to attend school" and caused him to "miss[] school due to lack of transportation" multiple times. *Id.* at ¶¶ 54, 87. Unlike his peers, who under Defendant's transportation scheme have ready access to transportation by bus or by their parent walking or driving them, *id.* at ¶ 62, B.D. "lacks a consistent means of" transportation solely because his parent is disabled. *Id.* at ¶ 47–50.

**2.** Defendant contests only one of the associational discrimination elements: it asserts that B.D. has not sufficiently alleged a denial of equal access. Doc. 13 at 20. That argument is unavailing.

As a threshold matter, Defendant's emphasis on whether it denied B.D. meaningful access to its programs, activities, and services is misplaced. Section 504 and the ADA guarantee equal access. *U.S. v. Univ. of Ala.*, 908 F.2d 740, 748

(11th Cir. 1990) ("[S]ection 504 requires that [persons with disabilities] have equal access."). B.D. has a right "to participate equally to" peers in Defendant's programs who have nondisabled parents. *Fry*, 137 S. Ct. at 756.

And B.D.'s allegations are more than sufficient to establish a denial of equal access (as well as meaningful access). He need not show that Defendant has "completely prevented" him from accessing school; instead, he need only plausibly allege that Defendant has "impeded" his access, making it more difficult for him to attend school than his peers. *See Am. Ass'n of People With Disabilities v. Smith*, 227 F. Supp. 2d 1276, 1291 (M.D. Fla. 2002) (citing *Shotz v. Cates*, 256 F.3d 1077, 1079-81 (11th Cir. 1991)). He has done that, alleging in detail that Defendant has impeded his access to school and even caused him to miss multiple days. Doc. 11 ¶¶ 31-64.

At any rate, whether a person has been denied equal access is a question of fact that is inappropriate to resolve at this stage. *See Silva*, 856 F.3d at 836 (whether the plaintiff was denied equal access was inherently fact-intensive, thus precluding summary judgment). Defendant identifies no cases in which a complaint was dismissed at the pleading stage for failure to adequately allege a denial of equal, or meaningful, access. It relies on: *Gastine v. Sec'y Fla. Dep't of Corr.*, 502 F. A'ppx. 905, 907 (11th Cir. 2021) (summary judgment); *Bircoll*, 480 F.3d at 1080 (summary judgment); *Todd*, 236 F. Supp. 3d at 1316 (multiple

evidentiary hearings); and *Medina v. City of Cape Coral*, 72 F. Supp. 3d 1274, 1275 (M.D. Fla. 2014) (summary judgment).

## II.   MS. AMBROSE HAS PLAUSIBLY ALLEGED CLAIMS UNDER SECTION 504 AND THE ADA

### A.   Clearing the underbrush: Defendant misapprehends the requirements of Section 504 and the ADA.

**1.** Defendant asserts that Ms. Ambrose has failed to state a claim because she "is not entitled to" Defendant's services. Doc. 13 at 7–8. The premise of that argument—that a person must be "entitled" to services—is flawed.

Neither statute requires a person to be a participant in or beneficiary of a program, let alone "entitled" to particular benefits of the program. Both include a catch-all clause that allows suit whenever a person is "subjected to discrimination." 29 U.S.C. § 794(a) ("no otherwise qualified individual with a disability" shall "be excluded from the participation in, be denied the benefits of, *or be subjected to discrimination under any program*" (emphasis added)); 42 U.S.C. § 12132 ("no qualified individual with a disability shall . . . be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, *or be subjected to discrimination by a[n] entity*" (emphasis added)).

In other words, as the Eleventh Circuit has held, "[t]he language of Title II's [and Section 504's] antidiscrimination provision[s] does not limit . . . coverage to conduct that occurs in the 'programs, services, or activities' of a" public entity. *Bledsoe*, 133 F.3d at 821–22. The catch-all provisions "prohibit[] all discrimination

12

by a public entity, regardless of the context." *Id.*; *Am. Ass'n*, 227 F. Supp. 2d at 1292 (Title II and Section 504 "proscribe more than such 'exclusion' and 'denial.' They both, in addition, more generically proscribe disability 'discrimination.'").

So, for example, if a public entity intends a service to benefit a particular group of individuals, but the service benefits the community at large, a person with disabilities would have a cause of action if the benefits were distributed to the community in a discriminatory manner. Under those circumstances, the person would be "subjected to discrimination by [the] public entity." *See* 42 U.S.C. § 12132.

That is what Ms. Ambrose has alleged here. Defendant's transportation scheme transports students but affords benefits to parents, such as assisting them with complying with Florida's compulsory attendance law. Doc. 11 ¶ 62. But the scheme disadvantages, and denies benefits to, parents with disabilities like Ms. Ambrose. Under the scheme, "all parents who live more than two miles from a school receive access to school-bus transportation, but those who live less than two miles from the school do not." *Id.* "Those parents can walk or drive their children to school." *Id.* "Absent a modification, that scheme subjects [parents like Ms. Ambrose] to discrimination by reason of" their disabilities. *Id.* (quoting 42 U.S.C. § 12132). "Other parents have access to a means to transport their children, but Ms. Ambrose—solely because of her disabilities—does not." *Id.*

Ms. Ambrose has stated a claim under the ADA's and Section 504's "denied benefits" clauses too. Regardless whether parents are "entitled" to the benefits of

Defendant's transportation system, they receive benefits from the system, and Ms. Ambrose lacks equal access to those benefits.

**2.**  Defendant also misapprehends Title II and Section 504's "qualified individual with a disability" requirement. According to Defendant, Ms. Ambrose is not a qualified individual with a disability because (1) she is not entitled to Defendant's services, and (2) she lives less than two miles from B.D.'s school. The first argument confuses the qualified-individual requirement with the zone-of-interests test, and the second argument is circular.

First, Defendant attempts to wield the qualified-individual requirement as a prudential standing doctrine, asserting that Ms. Ambrose is not suffering a cognizable injury under Section 504 and the ADA because she is not eligible for Defendant's services and her connection to them is too attenuated. But the qualified-individual requirement is not a prudential standing doctrine. It requires courts to consider a person's individual needs and circumstances and determine whether she is capable of benefitting from a program with or without a modification. *Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 406 (1979) ("An otherwise qualified person is one who is able to meet all of a program's requirements *in spite of his handicap*." (emphasis added)); *Plummer v. Branstad*, 731 F.2d 574, 577–78 (8th Cir. 1984) ("In determining whether individuals are 'otherwise qualified,' we look to their physical, emotional, or psychological abilities, their educational or experiential backgrounds, or their financial or personal needs."). And Defendant

does not assert that Ms. Ambrose's individual circumstances render her incapable of benefitting from its programs.

Defendant makes not a qualified-individual argument but a zone-of-interests argument, and under the proper analytical framework, the argument fails. Under the zone-of-interests test, "a statutory cause of action extends only to plaintiffs whose interests fall within the zone of interests protected by the law invoked." *Lexmark Int'l v. Static Control*, 572 U.S. 118, 129 (2014). Defendant, at bottom, asserts that Ms. Ambrose is not protected by the ADA and Section 504 because she is not entitled to ride the school bus herself. But Section 504 and the ADA broadly protect against discrimination, providing coverage where an entity subjects a person to discrimination. They protect not only against public entities directly excluding a person with disabilities from participation in a program but also against "various [other] forms of discrimination," such as "the discriminatory effects of . . . transportation . . . barriers." 42 U.S.C. § 12101(a)(5). Ms. Ambrose's interests fall within that zone of interests. She is suffering the discriminatory effects of Defendant's transportation scheme.

Second, Defendant's argument that Ms. Ambrose is not qualified because she lives less than two miles from B.D.'s school assumes one of the questions presented in this case: whether modifying the two-mile rule is a reasonable modification or instead a fundamental alteration. And "[a] public entity cannot merely state that the [alleged] discriminatory requirement is essential to the

fundamental nature of the activity at issue—it must provide evidence that the procedural requirement is necessary to the substantive purpose undergirding the requirement." *People First of Ala. v. Merrill*, 467 F. Supp. 3d 1179, 1215–16 (N.D. Ala. 2020) (citing *Schaw v. Habitat for Humanity*, 938 F.3d 1259, 1266–67 (11th Cir. 2019)). Defendant has presented no such evidence.

Lastly, Defendant incorrectly states that Ms. Ambrose has the burden to establish that her request to modify the two-mile rule is not a fundamental alteration. *See* Doc. 13 at 13. If Ms. Ambrose's allegations establish that such an accommodation is "reasonable in the general sense, that is, reasonable in the run of cases," *Alumni Cruises*, 987 F. Supp. 2d at 1305, then Defendant must show—as an affirmative defense—that the accommodation would create a "fundamental alteration" in its program. *Haddad v. Dudek*, 784 F. Supp. 2d 1308, 1328 (M.D. Fla. 2011) (Howard, J.) ("'Fundamental-alteration' is an affirmative defense."). And Ms. Ambrose has pleaded facts demonstrating that her request is reasonable in the general sense. Defendant has a bus stop in front of her subdivision that is a quarter of a mile from her home. It transports other students from there to B.D.'s school. It just needs to allow B.D. to access that bus stop. Doc. 11 ¶¶ 35–39.  That is reasonable—Defendant has even made such a modification in the past for nondisabled parents. *Id.* at ¶ 34; *Johnson v. St. Johns Cty. Sch. Bd.*, 2021 WL 1575983, at *2 (Fla. DOAH Apr. 5, 2019) ("Prior to the 2018-2019 school year,

Respondent provided bus transportation for Petitioner's children as 'courtesy riders,' students who live within two miles of their assigned school.").

### B.   Ms. Ambrose has plausibly alleged discrimination.

**1.** To state a claim under the ADA and Section 504, a plaintiff must allege: "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services . . . , or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." *Bircoll,* 480 F.3d. at 1085.

Ms. Ambrose has sufficiently alleged those elements.[2] First, she established that she is a qualified individual with a disability, alleging that she has a disability as defined by the ADA and Section 504 (which Defendant does not dispute) and is able to benefit from Defendant's transportation system with a reasonable modification. Doc. 11 ¶¶ 13–15, 18–19, 43–46. Ms. Ambrose's allegations establish that her disabilities do not prevent her from benefitting from the system with a reasonable modification. She is capable, for example, of benefitting from the system by having B.D. use the nearby bus stop.

Second, Ms. Ambrose has pleaded facts showing that Defendant has (1) denied her the benefits of its services and subjected her to discrimination (2) on the basis of disability. Ms. Ambrose has alleged that under Defendant's

---

[2] There is no dispute that Section 504 and Title II cover Defendant; Defendant does not contest that it receives federal funding and is a public entity. Doc. 11 ¶¶ 20 and 21.

transportation scheme, parents without disabilities have ready access to a means of transporting their children to school; if they live more than two miles from the school, they have access to a school bus, and if they live less than two miles, they can walk or drive their child. But parents with disabilities like Ms. Ambrose are denied such access and forced to rely on third parties to transport their children. *See Am. Council of Blind of N.Y. v. N.Y.C.*, 495 F. Supp. 3d 211, 235 (S.D.N.Y. 2020) ("[C]onditioning access upon arduous or costly coping mechanisms and on the assistance of strangers is anathema to the stated purpose of [Section 504] and the ADA."). Defendant's system thus has discriminatory effects on Ms. Ambrose and denies her benefits that other parents receive, yet Defendant has refused to provide her a reasonable accommodation in the form modifying its two-mile rule to allow B.D. to ride the bus and thus eliminate this barrier. Doc. 11 ¶¶ 5–6, 51–53, 55–59. Defendant has not offered to provide any accommodation whatsoever. *Cf. Todd*, 236 F. Supp. 3d at 1334 (Defendant offered a variety of accommodations, including coordinating a walking group for Ms. Todd's children and identifying and vetting a community member who was willing to drive the children to and from school).[3]

**2.** Defendant also argues that Ms. Ambrose has not sufficiently alleged denial of equal access and as such, no accommodation is necessary here. Doc. 13 at

---

[3] Defendant's argument that it had no duty to offer Ms. Ambrose alternative accommodations is unpersuasive. Doc. 13 at 14. Defendant cites *Smith v. Dunn*, but there, the plaintiff never requested an accommodation, nor was his need for one obvious. 2021 WL 4845123, at *11 (M.D. Ala. Feb. 9, 2021). "A plaintiff does not have to request an accommodation if 'the defendant otherwise had knowledge of an individual's disability and needs.'" *Id.* Here, Ms. Ambrose repeatedly put Defendant on notice of her disability and needs. Doc. 11 ¶¶ 55–59.

10. But Ms. Ambrose has explained that, unlike nondisabled parents, she lacks ready access to a means to transport B.D. to school. As a result, she is more dependent on the assistance of others than nondisabled parents, which puts her at greater risk of (1) distress and shame because she has to beg others for rides for B.D. and (2) violating Florida's compulsory attendance laws. *See Disabled in Action v. N.Y.C. Bd. of Elections*, 752 F.3d 189, 200 (2d Cir. 2014) (equal access "should not be contingent on the happenstance that others are available to help"); *Sheehan v. San Francisco*, 743 F. 3d 1211, 1232 (9th Cir. 2014) (being subjected to "greater injury or indignity" supports a denial of equal access), *rev'd in part on other grounds*, 135 S. Ct. 1765 (2015).

**3.** Finally, Defendant asserts that Ms. Ambrose has not alleged intentional discrimination. Defendant glosses over its deliberate indifference to Ms. Ambrose's rights by characterizing its actions as a "misunderstanding of her unique needs." Doc. 13 at 17. But Ms. Ambrose's allegations establish that Defendant knew she needed a modification to avoid discrimination, but its officials ignored that need. She requested a modification to the two-mile rule multiple times and even explained that Defendant's refusals violated her rights, but Defendant ignored her. Doc. 11 ¶¶ 51–59. Those allegations are sufficient to establish deliberate indifference. Even if Defendant "misunderstood" her needs, nothing prevented it from engaging with her to further assess them. The District's response, or lack thereof, is the very essence of deliberate indifference, which constitutes

19

intentional discrimination. *See Sunderland v. Bethesda Hosp.*, 686 F. App'x 807, 815 (11th Cir. 2017).

### III.   MS. AMBROSE HAS PLAUSIBLY ALLEGED A CLAIM UNDER THE FLORIDA CONSTITUTION.

Disability is a suspect classification under the Florida Constitution, Art. I, § 2, Fla. Con., and therefore, strict scrutiny applies to policies that discriminate against persons with disabilities. *Frandsen v. Cty. of Brevard*, 800 So. 2d 757, 759 (Fla. 5th DCA 2001). For the reasons above, Defendant's transportation scheme discriminates based on disability, so it must be narrowly tailored to advance a compelling government interest. *Id.* at 760. But there is no conceivable public interest in not allowing parents with disabilities to access school transportation.

Defendant asserts that because Ms. Ambrose has not stated a claim under the ADA, this claim should be dismissed. In support, it cites *Wilson v. Sarasota Cty.*, 2011 WL 5117566, at *4 (M.D. Fla. Oct. 25, 2011), but that case is inapposite. The court in *Wilson* relied on a Florida state court decision that considered the Florida Civil Rights Act (FCRA), not the Equal Protection Clause of the Florida Constitution. *See St John's Cty. Sch. Dist. v. O'Brien*, 973 So. 2d 535, 540 (Fla. 5th DCA 2007). The Florida Constitution does not provide for the same liability standard as the ADA and the FCRA. But even if it did, Ms. Ambrose has stated a claim under Section 504 and Title II.

### CONCLUSION

Defendant's motion should be denied.

20

Respectfully submitted,

*/s/ Lauren Brittany Eversole*
Lauren Brittany Eversole
FL Bar No. 120245
Kevin A. Golembiewski
FL Bar No. 1002339
Disability Rights Florida
2473 Care Drive, Suite 200
Tallahassee, FL 32308
850-488-9071 ext. 9702
laurene@disabilityrightsflorida.org
keving@disabilityrightsflorida.org

*Counsel for Plaintiffs*

Dated: June 17, 2022

21

## <u>CERTIFICATE OF SERVICE</u>

I, Lauren Brittany Eversole, certify that a true and correct copy of the above Plaintiffs' Response to Defendant's Motion to Dismiss or Motion for Judgment on the Pleadings has been served on counsel for Defendant, Kristen C. Diot and Michael P. Spellman, via ECF and email (kdiot@sniffenlaw.com and mspellman@sniffenlaw.com).

Dated: June 17, 2022

*/s/ Lauren Brittany Eversole*
Lauren Brittany Eversole
Disability Rights Florida
2473 Care Drive, Suite 200
Tallahassee, FL 32308
